**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN ELIAS BAEZ** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-7654** |
| **Acting Attorney Gen. TODD BLANCHE, *et al.*** | : | |

**MEMORANDUM OPINION**

**Henry, J.** **October 13, 2026**

This case is before the Court on John Elias Baez's Petition for Writ of Habeas Corpus (ECF No. 1). Baez challenges his current detention by Respondents at the Philadelphia Federal Detention Center after being arrested by Immigration and Customs Enforcement ("ICE"). Because I hold that Baez's detention violates due process, I will grant the writ and order his immediate release.

## I. BACKGROUND

Petitioner, a native of Venezuela entered the United States in July of 2022 at Del Rio, Texas and was not held at the border. Pet. ¶ 19. He traveled to Allentown, where he has resided since August 2022. *Id.* Petitioner holds a valid Employment Authorization Document and has a pending application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* ¶ 23. On September 30, 2026, ICE detained Petitioner and he was taken into custody at the Federal Detention Center in Philadelphia, Pennsylvania. *Id.* ¶ 29. Petitioner has requested that an immigration judge review his custody determination. Opp. at 3.

## II. DISCUSSION

Petitioner argues that his detention violates due process because Respondents detained him without making an individualized determination that detention was necessary. Pet. ¶ 47. In other words, he contends that he was detained without an individualized custody determination.

In *Vieira Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026), the Court held that due process required ICE to exercise its 8 U.S.C. § 1226(a) discretion through "an individualized determination as to . . . whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Id.* ¶ 33. The Court held that the record did not reflect an individualized assessment where ICE did not provide "a reasoned finding that Petitioner is dangerous or a flight risk, or unsuitable for conditions short of detention." *Dos Reis*, 2026 WL 1746649, at *4.

Here, Respondents do not address any argument that there was not an individualized custody determination before Petitioner was arrested. And on the record before the Court, it appears there was no individualized custody determination beyond a determination that Petitioner "is subject to President Donald Trump's Executive Order, titled 'Protecting the American People Against Invasion'" and that Petitioner does not have status as a citizen or resident of the United States.

I agree with many of my colleagues that detention without an individualized custody review violates due process, and that a determination of an individual's presence in the United States without lawful status is insufficient to meet that threshold. *See Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) ("Reliance on status alone amounts to 'a per se determination' that 'comports not with 1226(a), but with [the Government's] desired policy of detention.'"); *Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *5 (E.D. Pa. July 31, 2026) ("Given the government's failure to provide reasoning based on an individualized

determination, 'the facts clearly demonstrate that [Petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations.'"). In both *Dos Reis* and *Dzehtisarou*, the Court balanced the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) in determining whether detention without an individualized custody determination violated due process. Those factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*See Mathews*, 424 U.S. at 335.

I agree with the reasoning in *Dos Reis* and *Dzehtisarou* that Petitioner has a strong interest in freedom from physical confinement, that the risk of erroneous deprivation is great when an individual is detained without some determination of whether they present a danger or a flight risk, and the Government's interest in ensuring appearance at removal proceedings does not outweigh Petitioner's interests in freedom from physical confinement and a determination of risk prior to detention. *See Dos Reis*, 2026 WL 174469 at *5; *Dzehtisarou*, 2026 WL 2211392, at *5-6. Here, it cannot be said that there was a sufficient individualized custody determination to outweigh Petitioner's interest in freedom from physical confinement where the detaining agent's review of Petitioner's case determined only that he was in the United States without lawful status, and there is no evidence that he was dangerous or a flight risk. Petitioner's current detention thus violates his due process rights.

Respondents contend that there has been no deprivation of due process, as Petitioner has exercised his right to request a bond hearing before an immigration judge, who will make a determination as to Petitioner's custody. Respondents argue that "[t]his process provides Petitioner

with substantial procedural safeguards regarding his liberty, and those safeguards make the risk of erroneous deprivation extremely low." Opp. at 10. I disagree. A later bond hearing will not cure the initial procedural deficiency—Petitioner's arrest without an individualized custody determination. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025) ("[I]n this case, the issue is that there is no 'initial decision' for [Petitioner] to 'appeal.' Accordingly, '[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.'").

For the same reason, Petitioner was not required to exhaust any administrative remedies before requesting habeas relief. Respondents argue that Petitioner was required to exhaust administrative remedies in the form of completing a bond hearing and subsequent appeal to the BIA, if necessary, before filing his habeas petition with the Court. Opp. at 6-9. Administrative exhaustion for Section 2241 habeas petitioners is prudential, and courts may excuse exhaustion "if 'administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.'" *Dos Reis*, 2026 WL 1746649, at *3 (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). I again agree with many of my colleagues that administrative exhaustion is not required where, as here, "[a] later bond hearing [would] not necessarily cure the alleged constitutional violation that preceded it." *Id.* Here, the deprivation of process occurred when Petitioner was arrested without an individualized custody determination. A subsequent bond hearing—the purpose of which is *redetermination* of custody, *see Lopez*

*Benitez*, 795 F. Supp. 3d at 497—would not cure a deprivation of due process at the *initial* custody determination stage.

## III. CONCLUSION

Baez is being detained unconstitutionally, and as such, his Petition is granted and his immediate release is ordered.